IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE L. HENDRICKS, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 16 C 627 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| PAUL H. LAUBER, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tyrone Hendricks filed a civil rights action on January 14, 2016 against the City of Chicago, Cook County and the Chicago Police Department. (Dkt. 1). On June 20, 2016, Hendricks filed his Second Amended Complaint against only Chicago Police Detectives M. Fuller and Jacquelin Mok and Chicago Police Officers Michael Rodriguez and Paul Lauber (collectively, Defendants). (Dkt. 24). The Second Amended Complaint alleges claims of false arrest under 42 U.S.C. § 1983 (Counts I and II), malicious prosecution under state law (Count III), malicious prosecution under 42 U.S.C. § 1983 (Count IV), conspiracy to deny Plaintiff his constitutional rights under 42 U.S.C. § 1983 (Count V), and intentional infliction of emotional distress (Count VI). (*Id.*). Defendants filed a Motion for Summary Judgment on all of Plaintiff's claims. (Dkt. 104). Hendricks failed to file any response to Defendants' motion, despite being provided two generous extensions of time after twice missing his filing deadline. For the following reasons, Defendants' Motion for Summary Judgment (Dkt. 104) is granted.

1

## STATEMENT OF FACTS

Defendants filed their Motion for Summary Judgment on November 21, 2017. (Dkt. 104). According to the court-ordered briefing schedule, Plaintiff's response to Defendants' motion was due on December 19, 2017. (Dkt. 102). Plaintiff failed to file a response by that date. On January 4, 2018, Plaintiff's appointed counsel requested an extension of time to file the past-due response. (Dkt. 108). The Court granted the request and set a new filing deadline for Plaintiff's response of January 31, 2018. (Dkt. 109). Plaintiff's appointed counsel again failed to file any response to Defendants' Motion for Summary Judgment by the new deadline, including any response to Defendants' Local Rule 56.1(a) Statement of Uncontested Facts.

By motion on February 28, 2018 and at a Court hearing on March 14, 2018, Plaintiff's counsel notified the Court for the first time that Plaintiff had not been in contact with his appointed counsel since his release from incarceration in October 2017 and had failed to provide counsel with his address or other contact information. (Dkts. 116, 119). During the March 14 hearing, Defense counsel advised that Plaintiff was recently booked into Cook County Jail on March 6, 2018, and the Court directed Plaintiff's counsel to contact and confer with his client to determine whether he wished to proceed with his case. (Dkt. 119). During the March 14 hearing and in the corresponding docket entry, the Court warned Plaintiff that "failure to cooperate with his recruited Attorney can result in dismissal of his case for want of prosecution." (*Id.*). At a hearing on April 24, 2018, Plaintiff's counsel reported to the Court that he had been in contact with Plaintiff and that Plaintiff advised he wished to proceed with the case. (Dkt. 123). The Court set a new briefing schedule on Defendant's Motion for Summary Judgment, providing Plaintiff a *third* chance to file a response by May 15, 2018. (*Id*). Plaintiff failed yet again to file

any response whatsoever to Defendants' Motion for Summary Judgment by the new deadline, including any response to Defendants' Local Rule 56.1(a) Statement of Uncontested Facts.

Local Rule 56.1(b) requires an opposing party to a motion for summary judgment to file a concise response the movant's statement of material facts. LR 56.1(3). Failure to do so constitutes an admission of those uncontested facts. *Id.* ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). Federal Rule of Civil Procedure 56(c) similarly provides that, if the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2). Therefore, the Court construes Hendricks' failure to respond in any way to Plaintiff's Statement of Uncontested Facts as an admission of those facts. *See Whitfield v. Snyder*, 263 F. App'x 518, 521 (7th Cir. 2008) (affirming holding that "failure to respond to defendants' summary judgment motion constituted an admission of the defendants' material facts"); *United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 454 (7th Cir. 2005) (defendant failed to dispute any material facts asserted by government in support of summary judgment, so facts were deemed to be admitted); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

The following facts are taken from Defendants' Joint Local Rule 56.1(a) Statement of Uncontested Facts (Dkt. 106) and supported by the record and are not disputed.

On September 5, 2014, Officers Lauber and Rodriguez were on patrol in an unmarked vehicle when, at approximately 10:54 p.m., the Officers observed Hendricks in an alley urinating on the wall of a building at 330 S. Sacramento Boulevard. (*Id.* at ¶¶ 11-13). The Officers exited

the car and approached Hendricks in order to issue him a citation for urinating on a public way. (*Id.* at ¶¶ 14-16). When the Officers asked Hendricks for proof of identification, he was unable to provide any. (*Id.* at ¶¶ 17-18). The Officers placed Hendricks in handcuffs and Officer Rodriguez conducted a custodial search of him, during which Officer Rodriguez found a crack pipe in the left pocket of Hendricks' hoodie. (*Id.* at ¶¶ 19-21). Officer Lauber then ran a name check for Hendricks and discovered an active investigate alert for Hendricks for failing to register as a sex offender. (*Id.* at ¶¶ 22).

The Officers transported Hendricks to the 11th District police station for processing. Once at the station, Officer Lauber prepared an Arrest Report and Property Inventory Report and Officer Rodriguez prepared an Original Case Incident Report. (*Id.* at ¶¶ 23-25, Exs. I-K). Officer Rodriguez also prepared and signed two complaints against Hendricks: a Misdemeanor/Ordinance Violation complaint for urinating on a public way and a Misdemeanor Violation complaint for possession of drug paraphernalia. (*Id.* at ¶ 26, Exs. L-M). Officer Rodriguez then notified the Area North Detective Division that Hendricks was in custody. (*Id.* at ¶ 27).

On September 7, 2014, Detectives Mok was assigned to investigate whether Hendricks was a sex offender who had not registered as required. (*Id.* at ¶ 28). Detective Fuller assisted with the investigation. (*Id.* at ¶ 29). The Detectives were informed that Hendricks had been arrested on September 5, 2014 for urinating in a public way and possession of drug paraphernalia and that a name check had revealed that Hendricks had also failed to register as a sex offender. (*Id.* at ¶¶ 30-31). During their investigation, the Detectives learned that Hendricks was required to register as a sex offender because of a 1989 conviction for criminal sexual assault, that he

registered on August 26, 2013 after being released from prison, and that his 2013 registration was valid only until August 26, 2014. (*Id.* at ¶¶ 32-34, Exs. C, H, R, N).

On September 7, 2014, Detectives Mok and Fuller interviewed Hendricks at the 11th District station, after advising him of his *Miranda* rights and confirming he understood them. (*Id.* at ¶¶ 35-38). During the interview, Hendricks told the Detectives that he thought he had been registered upon recently being released from Cook County Jail. (*Id.* at ¶ 39). In their investigation, the Detectives reviewed Hendricks' criminal history and discovered that he had been arrested on July 14, 2014 and released from the Cook County Jail on July 15, 2014. (*Id.* at ¶¶ 43-45).

After the interview, Detective Mok contacted the Cook County Jail and asked a correctional officer to check the jail's records to determine if Hendricks had signed an Illinois Sex Offender Registration Act Notification Form. (*Id.* at ¶¶ 40-41). The correctional officer did so and faxed Detective Mok a copy of a Notification Form signed by Hendricks on July 15, 2014 when he was released from Cook County Jail. (*Id.* at ¶¶ 42, 46, Ex. O). The Notification Form that Hendricks signed stated that he was required to register on or before July 18, 2014. (*Id.* at ¶ 46, Ex. O).

Hendricks failed to register on or before July 18, 2014. (*Id.* at ¶ 47, Ex. C). Hendricks also failed to register on or before August 26, 2014. (*Id.*). As of September 5, 2014, the last time Hendricks had registered was on August 26, 2013. (*Id.* at ¶¶ 48-50, Ex. C, H).

In the afternoon of September 7, 2014, Detective Mok presented Hendricks' case to an Assistant State's Attorney, who approved felony charges against Hendricks for failure to register as a sex offender. (*Id.* at ¶¶ 51-54). Officers Lauber and Rodriguez did not speak with the ASA about the case. *(Id.)*. Detective Mok then signed a Complaint against Hendricks for violating

5

the Illinois Sex Offender Registration Act, 730 ILCS 150. (*Id.* at ¶ 56, Ex. Q). The Complaint stated that Hendricks "knowingly failed to register . . . within the time period prescribed in subsection (c) of 730 ILCS 150/3." (*Id.* at Ex. Q).

    730 ILCS 150/3 provides, in relevant part:

> (a) A sex offender . . . or sexual predator shall, within the time period prescribed in subsections (b) and (c), register in person and provide accurate information as required by the Department of State Police . . .
>
> (b) Any sex offender . . . or sexual predator, regardless of any initial, prior, or other registration, shall, within 3 days of beginning school, or establishing a residence, place of employment, or temporary domicile in any county, register in person as set forth in subsection (a) or (a-5).
>
> (c) The registration for any person required to register under this Article shall be as follows: . . .
>
> > (2.5) Except as provided in subsection (c)(4), any person who has not been notified of his or her responsibility to register shall be notified by a criminal justice entity of his or her responsibility to register. Upon notification the person must then register within 3 days of notification of his or her requirement to register. . . .
> >
> > (4) Any person unable to comply with the registration requirements of this Article because he or she is confined, institutionalized, or imprisoned in Illinois on or after January 1, 1996, shall register in person within 3 days of discharge, parole or release.

Failing to register in compliance with the Act is a Class 3 felony. 730 ILCS 150/10.

    On September 8, 2014, a judge entered a finding of probable cause on the charge for failure to register as a sex offender and set bond at $400,000. (Dkt. 106 at ¶ 58, Ex. 4). On September 18, 2014, Detective Fuller testified before a grand jury that Plaintiff failed to register as a sex offender and the grand jury returned an indictment against Hendricks for "knowingly fail[ing] to report, in person, as a sex offender with the Chicago Police Department within three (3) days of establishing a residence or temporary domicile in the City of Chicago, Cook County,

Illinois" on July 19, 2014 and through September 4, 2014, in violation 730 ILCS 150/3. (*Id.* at ¶¶ 59-60, Ex. S).

On April 2, 2015, Judge Maura Slattery Boyle held a bench trial on the failure to register charge. (*Id.* at ¶ 63, Ex. H). At trial, Hendricks' defense counsel argued that, while Hendricks might be guilty of failing to register annually as required under 730 ILCS 150/6,[1] he had been charged under a different section of the Act: 730 ILCS 150/3. (*Id.* at Ex. H). She argued further that Hendricks could not be guilty of the crime charged because he had not changed addresses since he first registered in August 2013 and, therefore, had not established a new residence as required to trigger the registration requirement set forth in 730 ILCS 150/3. (*Id.*) Judge Slattery Boyle agreed and found Hendricks not guilty, explaining that because he did not change addresses he did not violate the portion of the statute listed in the indictment. (*Id.* at ¶ 66, Ex. H, U).

On January 14, 2016, Hendricks filed his original *pro se* Complaint. (Dkt. 1). The Court appointed counsel on March 31, 2016 and Hendricks' appointed counsel filed a Second Amended Complaint on June 30, 2016. (Dkt. 24).

**LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Rather, the Court must "construe all factual disputes and draw all reasonable inferences in favor

---

[1] 730 ILCS 150/6 states, in relevant part, that "[a]ny other person who is required to register under this Article shall report in person to the appropriate law enforcement agency with whom he or she last registered within one year from the date of last registration and every year thereafter and at such other times at the request of the law enforcement agency not to exceed 4 times a year."

7

of [] the non-moving party." *Cole v. Bd. of Trustees of N. Ill. Univ.*, 838 F.3d 888, 895 (7th Cir. 2016), *cert. denied*, 137 S.Ct. 1614 (2017). "A factual dispute is genuine only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't,* 755 F.3d 594, 599 (7th Cir. 2014) (internal quotation omitted).

The Court's obligation to construe the facts in the non-movant's favor, however, does not diminish the non-movant's responsibility to present those facts in the first place. *See Whitfield v. Snyder*, 263 F. App'x 518, 521 (7th Cir. 2008). The initial burden is on the moving party to inform the district court why a trial is not necessary and "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). But "[u]pon such a showing, the nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Celotex, 477 U.S. at 322.) In other words, summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

If the nonmoving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Furthermore, failure to respond to any argument in response to a summary judgment motion constitutes a waiver of that argument. *See C & N Corp. v. Gregory Kane & Illinois River Winery, Inc.*, 756 F.3d 1024, 1026 (7th Cir. 2014). Here, Hendricks failed to respond in any way to the facts and arguments set forth in Defendants' Motion for Summary

8

Judgment. Therefore, the Court considers only those undisputed facts and arguments presented by Defendants in determining whether Defendants are entitled to summary judgment on Hendricks' claims.

## **DISCUSSION**

Defendants seek summary judgment on all of Hendricks' claims, including for false arrest under 42 U.S.C. § 1983 (Counts I and II), malicious prosecution under state law (Count III), malicious prosecution under 42 U.S.C. § 1983 (Count IV), conspiracy to deny Plaintiff his constitutional rights under 42 U.S.C. § 1983 (Count V), and intentional infliction of emotional distress (Count VI).

**I.  False Arrest**

Defendants move for summary judgment on Hendricks' false arrest claims on the grounds that probable cause existed to arrest him and, in the alternative, that they were entitled to qualified immunity.

Probable cause to arrest is an absolute defense to a false arrest claim under Section 1983. *Gutierrez v. Kermon*, 722 F.3d 1003, 1007 (7th Cir. 2013) (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006)). "Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* at 1008 (citing *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir.2013)). "Probable cause is an objective test, based upon factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Wells v. City of Chicago*, 1 F. App'x 515, 518 (7th Cir. 2001) (internal quotations omitted). "If the test is satisfied 'the arrest is lawful even if the belief would have been mistaken.'" *Urbanski v. City of Chicago*, No. 09-CV-

280, 2011 WL 1103886, at *4 (N.D. Ill. Mar. 25, 2011) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998)).

According to the material facts set forth in Defendants' Rule 56.1 Statement, which remain undisputed due to Hendricks' failure to file any response, probable cause existed for Hendricks' arrest and detention in the 11th District station.

Officers Rodriguez and Lauber arrested Hendricks for urinating in a public way, possession of drug paraphernalia, and failure to register as a sex offender. If an officer has probable cause to believe an individual has committed "even a very minor criminal offense in his presence," she may lawfully arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Therefore, probable cause to arrest Hendricks for any one of these offenses justifies his arrest. Here, the Officers had probable cause to arrest Hendricks for all three.

First, the Officers actually observed Hendricks commit an ordinance violation by urinating in a public way. The Municipal Code of Chicago authorizes police officers to arrest any individual observed urinating or defecating on the public way. *See* Chicago Mun. Code § 8–4–081 ("No person shall urinate or defecate on the public way . . . . [A]ny person who violates this section shall be fined not less than $100.00 nor more than $500.00, or shall be punished by imprisonment for not less than five days nor more than ten days or by both such fine and imprisonment."); Chicago Mun. Code § 2-84-230 (The members of the police department shall have power: (1) To arrest or cause to be arrested, with or without process, all persons who break the peace, or are found violating any municipal ordinance or any criminal law of the state . . ."); *see also, e.g.*, *Urbanski*, 2011 WL 1103886, at *4 (recognizing that "[u]nder the Municipal Code of Chicago, police officers are empowered to arrest any individual observed urinating or

defecating on the public way") (internal citations omitted).  Then, when conducting a lawful custodial search, *see United States v. Paige*, 870 F.3d 693, 700 (7th Cir. 2017) ("If an officer has probable cause to arrest, she also may conduct a search incident to that lawful arrest without any additional justification."), the Officers discovered Hendricks was in possession of drug paraphernalia.  Finally, after running the name search, the Officers discovered the investigative alert on Hendricks for failure to register as a sex offender.  A reasonable person in the Officers' shoes would find after seeing the alert that there was probable cause that Hendricks had committed a crime by failing to register as sex offender when required to do so.

Additionally, the Detectives discovered further evidence through their investigation that Hendricks was required to register as a sex offender and failed to do so.  Hendricks admitted that he last registered on August 26, 2013 and failed to register again one year later on or before August 26, 2014.  Also, the Cook County Jail sent the Detectives a Notification Form showing that Hendricks was required to register by July 18, 2014 and Hendricks admitted he failed to do so.  The fact that the Notification Form may have been wrong such that Hendricks did *not* have to register before July 18, 2014 is of no event.  A reasonable person would accept what was reported on the Notification Form as true, particularly because Hendricks' signature on the form indicated that he did not dispute the Jail's finding at the time that he was required to register by July 18.  *See Wells*, 1 F. App'x at 518 (a finding of probable cause "does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable") (internal quotations omitted); *see also Urbanski*, 2011 WL 1103886, at *3 (If the objective probable test is satisfied, "the arrest is lawful even if the belief would have been mistaken.") (internal quotations omitted). Regardless, Hendricks' failure to register by August 26, 2014 provides an independent basis for a finding of probable cause that he had committed a crime.

11

Therefore, even if the trial judge were correct and the Officers and Detectives were ultimately wrong and Hendricks was not required to register due to change of address, that does not negate probable cause for the arrest. An arrest for one offense is still valid provided probable cause exists as to *any* other offense, for example, failure to register annually. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[An officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). Therefore, the Court grants summary judgment on Hendricks' false arrest claims (Counts I and II) because Defendants had probable cause to arrest and detain him.

Defendants are also entitled to qualified immunity on Hendricks' false arrest claims. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Locke v. Haessig*, 788 F.3d 662, 666–67 (7th Cir. 2015) (internal citations omitted). Evaluating a claim of qualified immunity requires a two-step analysis: "(1) 'whether the plaintiff['s] claim states a violation of [his] constitutional rights,' and then (2) 'whether those rights were clearly established at the time the violation occurred.'" *Braun v. Baldwin*, 346 F.3d 761, 779 (7th Cir. 2003) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000)). "The plaintiff carries the burden of defeating the qualified immunity defense." *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). Because Hendricks fails to show an unlawful arrest in violation of his Fourth Amendment rights, Defendants are entitled to qualified immunity as a matter of law on the false arrest claims.

## II.    Malicious Prosecution

Probable cause is also a complete defense to Hendricks' claims of malicious prosecution claim under both state and federal law. *See Cannon v. Newport*, 850 F.3d 303, 306 (7th

Cir.), *cert. denied*, 138 S. Ct. 320 (2017) (citing *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015)).

To prevail on a malicious prosecution claim under Illinois law, a plaintiff must prove "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011) (quoting *Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill. 1996)); *see also Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). "The absence of any single element is fatal to a claim." *Id.*

With regard to federal law, the Supreme Court held in *Manuel v. City of Joliet, Illinois* that a plaintiff can bring a Fourth Amendment claim for post-legal-process pretrial detention without probable cause but remanded the case to the Seventh Circuit to determine "the elements of, or rules applicable to, such a claim." 137 S. Ct. 911, 919, 922 (2017). The Seventh Circuit has not yet done so. Several other circuits have determined the elements of such a claim and are divided roughly in two camps: one requiring only that the plaintiff establish a Fourth Amendment violation and the other requiring that the plaintiff establish both a Fourth Amendment violation and the elements of a malicious prosecution claim.[2] While the Seventh Circuit has not decided which approach applies, it has recognized that "nothing in *Manuel* changed the general rule that the federal constitution does not codify state tort law." *Hurt v. Wise*, 880 F.3d 831, 843 (7th Cir. 2018). Regardless, every circuit requires at least that the

---

[2] *See, e.g., Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) (requiring that the plaintiff show only a Fourth Amendment violation); *Humbert v. Mayor and City Council of Baltimore City*, 866 F.3d 546, 555 (4th Cir. 2017) (same); *Castellano v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003) (same); *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010) (same); *see also, e.g., Manganiello v. City of New York*, 612 F.3d 149, 161 (2d. Cir. 2010) (requiring that plaintiff also establish elements of state law malicious prosecution claim, including that defendant acted with malice); *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d. Cir. 2009) (same); *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (same); *Margheim v. Buljko*, 855 F.3d 1077, 1082 (10th Cir. 2017) (same); *Grider v. City of Auburn*, 618 F.3d 1240, 1256 & n. 24 (11th Cir. 2010) (same).

plaintiff show the seizure was objectively unreasonable. *See e.g., Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99 (1st Cir. 2013) (The two approaches "are largely identical with one caveat": whether the plaintiff must "demonstrate that the defendant officer acted with subjective malice" or "need only establish that his seize was objectively unreasonable."). Therefore, under either approach, a showing of probable cause defeats the claim. *See, e.g.*, *Chachere v. City of Chicago*, No. 16 C 2401, 2018 WL 1087643, at *7 (N.D. Ill. Feb. 28, 2018) (granting summary judgment on claim brought under *Manuel* where officers had probable cause to arrest plaintiff).

The Court grants summary judgment on Hendricks' state and federal law malicious prosecution claims (Counts III and IV) because, as discussed above, Defendants had probable cause to arrest and detain Hendricks. Again, Defendants are also entitled to qualified immunity on the federal malicious prosecution claim under Section 1983 because Hendricks fails to show a violation of his constitutional rights. *See Braun*, 346 F.3d at 779 (to defeat qualified immunity defense, plaintiff must show a violation of his constitutional rights); *Rabin*, 725 F.3d at 632 ("The plaintiff carries the burden of defeating the qualified immunity defense.").

### III. Conspiracy

To prevail on a claim for conspiracy to violate one's constitutional rights under Section 1983, a plaintiff must prove "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988). "[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (citing *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir.2000)). "In other words, there is no such thing as a stand-alone claim for 'conspiracy'—there must be an underlying constitutional violation." *Hicks v. City of*

*Chicago*, No. 15 C 06852, 2017 WL 4339828, at *7 (N.D. Ill. Sept. 29, 2017) (citing *Smith*, 550 F.3d at 617). Thus, failure to prove an underlying constitutional violation is fatal to the conspiracy claim. *See Cefalu*, 211 F.3d at 423 ("The jury's conclusion that the Cefalus suffered no constitutional injury thus forecloses relief on the conspiracy claim."). As discussed above, Hendricks fails to show any violation of his constitutional rights. Defendants are entitled to summary judgment on Hendricks' conspiracy claim on that basis alone.

Even if Hendricks could prove an underlying constitutional violation, he fails to show any agreement between Defendants to deprive him of his constitutional rights. Hendricks must show facts that "raise the inference of mutual understanding," meaning that "the acts performed by the members of [the] conspiracy are unlikely to have been undertaken without an agreement." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000). Hendricks provides no factual support for an inference that there was any agreement among the Defendants to arrest him on false charges or to deprive him of a fair hearing based on false evidence, as he alleges. The undisputed facts show nothing more than acts conducted by each individual Defendant that are consistent with a typical police investigation. *See, e.g., Bisharat v. Vill. of Niles*, No. 10 C 00594, 2014 WL 2514510, at *6 (N.D. Ill. June 4, 2014) (evidence of acts "typical of a police investigation, not something that would be unlikely to occur absent a conspiracy" is insufficient to sustain a finding of conspiracy). Therefore, Defendants are also entitled to summary judgment on Hendricks' conspiracy claim because it is based entirely on his own speculation. *See Amundsen*, 218 F.3d at 718 ("[A] conspiracy claim cannot survive summary judgment if the allegations are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy.") (internal quotations omitted); *see also Delapaz v.*

*Richardson*, 634 F.3d 895, 901 (7th Cir. 2011) ("conjecture alone cannot defeat a summary judgment motion").

The Court grants summary judgment on Hendricks' claim for conspiracy to deprive him of his constitutional rights under Section 1983 (Counts V).

## IV. Intentional Infliction of Emotional Distress

Under Illinois law, the statute of limitations for an intentional infliction of emotional distress claim against governmental entities and their employees is one year. 745 ILCS 10/8-101(a); *Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). An intentional infliction of emotional distress claim in the course of an arrest and prosecution accrues on the date the plaintiff suffers the injury. *See Evans*, 434 F.3d at 934 (rejecting argument that cause of action did not accrue until the termination of the state criminal proceedings); *see also Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013) ("[C]laim of intentional infliction of emotional distress in the course of arrest and prosecution accrues on the date of the arrest."). "The mere continuation of the prosecution is insufficient to 'restart' the statute of limitations." *Cairel v. Alderden*, No. 09 C 1878, 2014 WL 916364, at *10 (N.D. Ill. Mar. 6, 2014), *aff'd*, 821 F.3d 823 (7th Cir. 2016) (quoting *Bridewell*, 730 F.3d at 678). The latest possible date on which Hendricks' intentional infliction of emotional distress claim could have accrued is September 18, 2014, when Detective Fuller testified in front of the grand jury. Hendricks did not file his suit until more than one year later on January 14, 2016. Therefore, his intentional infliction of emotional distress (Count VI) is time-barred.

## CONCLUSION

For the reasons stated above, the Court grants the Defendants' Motion for Summary Judgment on all claims. (Dkt. 104).

_____
Hon. Virginia M. Kendall
United States District Judge

Date: May 31, 2018